Pratt *v.* Douglas.

CHARLES E. PRATT, administrator of Eliza B. Cory, deceased, appellant,

*v.*

THOMAS DOUGLAS, surviving executor of Lewis Cory, deceased, respondent.

1. Primarily, the courts of a foreign country in which personal property of a testator may be found, have jurisdiction only to grant letters of probate, and of actions for the recovery of the property ancillary to its administration in the courts of the testator's domicile, and cannot entertain an administration suit founded on questions relating to the construction of the will or the administration of the estate; but the parties who might insist upon the jurisdiction of the courts of the domicile over the subject may, by their conduct, give the foreign court jurisdiction to construe the will, and even to make administration upon property of the testator.

Pratt v. Douglas.

2. A bill filed by an executor of a testator whose domicile was in another state, against the administrator of a co-executor for an account of the latter's administration of the testator's estate—letters of administration on the estate of the deceased executor having been taken out in this state—will give the court of chancery jurisdiction to become a court for the construction of the will, and to take an account of the whole estate of the testator which came to the possession of the deceased executor, both in respect to the latter's rights therein and his disbursements connected therewith, although a considerable part of the testator's property was located in the place of the testator's domicile.

3. The court, in exercising jurisdiction in such a case, will be governed by the law of the testator's domicile so far as concerns the testator's personal estate and the proceeds of his lands situated there, sold and converted into money by the deceased executor; but the rights of the parties in the testator's lands situated in this state will be decided by the law of this state.

4. The incidents of real estate, its disposition and alienation, the right of succession, and all questions as to burdens and liabilities imposed upon it, depend solely upon the *lex rei sitœ*. The law of the country where the testator may be domiciled at his death cannot impose burdens or liabilities upon or provide for the disposition of lands in a manner not recognized by the law of the country where the estate is situated.

5. A testator domiciled in California died possessed of considerable personal estate and seized of lands in California and also in New Jersey. The law of California recognizes two kinds of property as between husband and wife—separate property and community property. On the husband's death, the community property is subject to the payment of debts and expenses of administration, and the widow is entitled to the one-half part of the residue thereof; the other half the husband may dispose of by his will. In an administration suit —*Held*, that the community law was applicable to the testator's personal estate and to the proceeds of the sale of his lands situated in California, but that it was not applicable to lands situate in this state, or the proceeds of the sale thereof.

6. In California, the wife's interest in community property is substituted in the place of dower at common law; and in cases of wills made by husbands, purporting to dispose of the community property, the general doctrine of the law concerning election between a testamentary disposition and the widow's legal right of dower applies with respect to the force and effect of the widow's election to take under her husband's will upon her right in the community property.

7. To make a case for an election by the widow between her right of dower and a testamentary disposition, her claim of dower must be inconsistent with and repugnant to some of the dispositions of the will, and must disturb or disappoint the will.

8. Where a testator has only a partial interest in property he disposes of by his will, courts will incline as far as possible in favor of a construction which

will apply the language of the will only to the interest or estate which the testator is able in his own right to dispose of; and it requires an unequivocal expression or indication of an intent to dispose of the entire property to raise a necessity for an election.

9. Upon a gift in general words of description, such as " all my lands," or " all my estate," an obligation to elect will not arise ; for the testator's language can have full effect when applied only to his share or interest, and he is presumed to have intended to give only the property he had power to dispose of. On a gift of specific property, a case for an election by the co-owner of the property so given, who is himself a beneficiary under the will, will arise only where the testator's gift of it to another is so expressed by words of description as to import an intent to give to the latter the whole of the common property in its entirety.

10. Testator, by his will, appointed his wife executrix, and A B, C D and E F executors. He gave, devised and bequeathed all his real and personal estate to his wife, "for her sole use and benefit, for and during the period of her natural life, to be under her control and used by her as she may see fit to use the same." He directed that his wife should act and have the sole custody and charge of his estate during her lifetime, and that his executors should take charge thereof after the death of his wife. He provided that in case his wife "should find it necessary or see fit to dispose of any part or all of the same, I do hereby authorize, empower and direct my said wife as my executrix to sell, deed and dispose of the same   *   *   *   *   as she may deem proper, and to make good and sufficient deed or deeds for any part or the whole of my estate so sold or conveyed." He ordered that his executors, after his wife's death, should sell the whole of his estate, real and personal, remaining at the decease of his wife, or so much of it as was in California, and dispose of the proceeds in paying certain legacies. The testator, at the time of making his will, owned four shares of the stock of the Rahway Bank, and sixty-three shares of the stock of the New Jersey Railroad and Transportation Company, which were increased by stock dividends to seventy-nine shares at his death. These stocks he described in his will as " four shares of Rahway Bank, and about sixty shares of New Jersey Railroad and Transportation Company," " all of which," he added, " I wish my executors to take charge of and faithfully carry out my last will and testament." The will also contained a residuary gift of the balance of his estate. The widow proved the will and converted and disposed of all the testator's personal estate, and sold and conveyed all his lands in California and some of his lands in New Jersey. In an action for an account of her administration—*Held,*

(1) That the testator, by his will, gave his widow only a life estate in his estate, real and personal, and that the power of sale given to her as executrix did not enlarge her estate or enable her to dispose of the testator's property and take the proceeds to her own use absolutely.

(2) That with respect to so much of the testator's lands in California, and his personal estate in, or invested in California, as was community property,

Pratt v. Douglas.

the widow took the one-half part of the residue thereof remaining, after payment of debts and expenses, absolutely, and that as to such property the widow was not put to an election by reason of any of the provisions of her husband's will.

(3) That the widow did not lose her right in that part of the community property either by estoppel or election by the fact that she sold and conveyed the same without any claim of her community right, and made no inventory or account of the, testator's estate—it appearing that she acted in good faith, upon advice that under the power of sale in the will she was entitled to the whole proceeds of the sales for her own use absolutely.

(4) That the community law of California did not aply to the testator's lands in New Jersey, and that in that part of his estate the widow had no estate except the life estate given by the will or her common law right of dower.

(5) That the testator, by his will, disposed of his stocks in the Rahway Bank and the New Jersey Railroad and Transportation Company specifically and in language importing his intention to give the whole in its entirety, and that the widow was put to an election between the testamentary gifts to her and her community interest therein.

11. A tenant for life is obliged to pay the ordinary annual taxes, but assessments laid upon the property by the municipal authorities for permanent improvements are to be apportioned equitably between the life tenant and the interests in remainder.

12. A tenant for life cannot lay out money in buildings or improvements and charge the outlay to the inheritance.

----

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Cory* v. *Cory, 10 Stew. Eq. 198.*

Lewis Cory died January 2d, 1863. He was married to Eliza, daughter of George Brown, in 1831. He resided in Rahway, in this state, until 1849, when he removed to California and resided there until his death. By his will, which bears date May 2d, 1855, and was executed in the presence of three witnesses, he devised and bequeathed as follows :

"I give, devise and bequeath all my real and personal estate whatsoever and wheresoever unto my beloved wife, Eliza Cory, for her sole use and benefit, for and during the period of her natural life, to be under her control and used by her as she may see fit to use the same, and in case she should find it necessary or see fit to dispose of any part or all of the same, I do hereby authorize, empower and direct my said wife as my executrix hereinafter named, to sell, deed and dispose of the same, or any part thereof, from time to

time, as she may deem proper, and to make good and sufficient deed or deeds for any part or the whole of my estate so sold or conveyed.

"After the death of my said wife it is my will and I do order my executors hereinafter named to sell the whole of my estate, real and personal, remaining at the decease of my wife, or so much of it as is in California, and dispose of the proceeds as follows, to wit: [Giving legacies of several sums to several persons, and a salt meadow lot to William F. Brown.]

"The balance of my estate, after paying the above legacies, I give and bequeath unto my brothers, Henry A. Cory, Uzal Cory, and my brother-in-law, Wm. F. Brown, to be divided between them, share and share alike.

"*Lastly.* I do hereby nominate and appoint my wife, Eliza Cory, executrix, and my friend, Thomas Douglass, of the city of San José, California, and my brother, Henry A. Cory, who lives at Plainfield, state of New Jersey, and my brother-in-law, William F. Brown, of Rahway, New Jersey. I further request that neither of the above executors shall be required to give bonds, as I have full confidence in their honesty and ability to carry out my last will and testament, and to act in manner following, that is to say: my wife, Eliza Cory, to act and to have the sole custody and charge of my estate, without giving bonds to any person or court during her lifetime, and my executors to take the charge thereof after the death of my wife. The lot of salt meadow, above named, is the same I hold by deed from William F. Brown and John J. Brown, some time in 1848, lying in Woodbridge township, Middlesex county, New Jersey, where I now own one house and lot in the town of Rahway, situate on the corner of Main and Cherry streets, one lot on Fulton street, and several other lots on Milton avenue. Also four shares of the stock of Rahway Bank, and about sixty shares of New Jersey Railroad and Transportation Company, all of which I wish my executors to take charge of and faithfully carry out my last will and testament."

After the testator's death, the will was admitted to probate in Santa Clara county, California, on the petition of Mrs. Cory and Mr. Douglas, in February, 1863, and letters testamentary, bearing date March 7th, 1863, were issued thereon to them.

At the time of his death, the testator was seized of lands in California and in this state, and possessed of considerable personal estate. With the exception of seventy-nine shares of the capital stock of the New Jersey Railroad and Transportation Company, and four shares of the stock of the Rahway Bank, the testator's whole personal estate was invested in California.

Mrs. Cory, in May, 1864, left California with the intention of residing in the east, and died at the house of David B. Dunham, in Rahway, on the 24th of November, 1880.

Mrs. Cory took exclusive possession and management of the testator's estate, and during her lifetime sold all the testator's lands in California, and converted his personal estate invested there into cash and securities in her individual name. She also sold portions of the lands of the testator in this state, and caused the bank and railroad stocks, with the increase thereof from stock dividends, to be transferred to her in her individual name.

No account or inventory of the testator's estate was ever made or filed.

Mrs. Cory died intestate. At the time of her death she had in her possession, in a tin box, securities, choses in action and evidences of debt of various kinds, amounting in all to about $80,000. On the 3d of December, 1880, letters of administration on her estate were granted by the surrogate of the county of Union, in this state, to Charles E. Pratt. The other executors named in the will of Lewis Cory died before Mrs. Cory, leaving Thomas Douglas the sole surviving executor. On the 21st of February, 1881, Lewis Cory's will was admitted to probate in this state by the surrogate of the county of Union, and letters testamentary were issued thereon to Mr. Douglas.

Dunham, at whose house Mrs. Cory died, and into whose possession the tin box and its contents came, filed in the court of chancery a bill of interpleader, to which Pratt, as administrator of Mrs. Cory, and Douglas, as executor of Lewis Cory, were made parties. An order of interpleader having been made, Douglas, as executor, filed his bill of complaint against Pratt, administrator, as defendant. The bill and answer, in substance, put in issue the accounting of the administration by Mrs. Cory of her husband's estate, and the right of Douglas, his surviving executor, to indemnity therefor out of the assets of her estate. From a decree on final hearing on bill, answer and depositions, both parties appealed.

*Mr. Cortlandt Parker,* for Charles E. Pratt, administrator of Eliza B. Cory, deceased.

The decree is—1. That Mrs. Cory originally claimed title to and took possession of all the funds, property and moneys which

were invested in the securities mentioned in an order of May 28th, 1881, standing in her name at her death, by virtue of the will of her husband. 2. That, by the true construction of his will, Mrs. Cory was entitled to the use and enjoyment, of her own right, and as her absolute property, of the interest realized by her from said moneys and properties of Lewis Cory, and the accumulations arising from the interest thereof, and that so much of the said securities remaining at her death as consisted of interest received by her on the estate, and the accumulations thereof, belonged to her, and should be retained by her administrator. 3. That as to the principal of her husband's estate, however arising, she had only an estate for life, and held it in trust for his surviving executor. 4. That the amount of principal so held was $52,000, and that the complainant, Lewis Cory's surviving executor, was entitled to recover that sum, with interest from her death. 5. That the executor was entitled to select and take such of the securities held by Mrs. Cory's administrator as should amount to the aforesaid sum; and the administrator was directed to make assignment of them accordingly; but—6. He might, at his option, satisfy the decree by payment of said $52,000, with interest; and—7. Costs.

The administrator appeals from the clauses of said decree numbered 1, 3, 4, 5, 6 and 7; and the executor files his cross-appeal from the clause No. 2, by which interest and accumulations are awarded to the administrator.

I. Under and by virtue of the last will and testament of Lewis Cory, deceased, the said Eliza B. Cory, his widow, became possessed of an absolute estate in all personalty by said Lewis Cory bequeathed and devised, and to him belonging at the time of his death, and therefore the complainant, his surviving executor, has no right to any part of it. *Courter* v. *Howell, 6 Stew. Eq. 80;* *Barford* v. *Street, 16 Ves. 135; Irwin* v. *Farrer, 19 Ves. 86; Annin* v. *Van Doren, 1 McCart. 140; Downey* v. *Borden, 6 Vr. 74, 7 Vr. 461.*

But the statute of California has settled this matter. The *Civil Code of California ¶ 6,376 § 1,376*, re-enacting former laws,

reads thus—" The validity and interpretation of wills wherever made, are governed, when relating to property within the state, by the law of the state." This being so, we find this further provision (*Civil Code of California* ¶ *5,679* § *679*): "The ownership of property is absolute, when a single person has the absolute dominion over it, and may use it, or dispose of it according to his pleasure, subject only to general laws." This enactment is evidently in accordance, like many of the California statutes, with *N. Y. Rev. Stat. part 2 ch. 1 art. III.* § *105:* "Every power of disposition shall be deemed absolute, by means of which the grantee is enabled in his lifetime to dispose of the entire fee for his own benefit."

Now, what can be clearer than the absolute power conferred by the language of this will? Review the words:

" For her sole use and benefit during her natural life; to be under her control, and used by her as she may see fit to use the same, and in case she should find it necessary or see fit to dispose of all or any part of the same, I do hereby authorize, empower and direct my said wife as my executrix, to sell, deed and dispose of the same or any part thereof, from time to time as she may deem proper. * * * After the death of my wife I do order my executors to sell the whole of my estate, real and personal, *remaining* at the death of my wife, or so much of it as is in California &c. &c."

Words could not give more unlimited power of disposal. The force and extent of the power of "disposal" is shown in Chancellor Green's opinion as to the word "unexpended." The following cases illustrate the force of the words "see fit," or their equivalent, "think proper:" *Hixon* v. *Oliver, 13 Ves. 108;* a gift of a sum to a wife, "to be disposed of as she thinks proper," vests the whole interest, *Markelyne* v. *Markelyne, Amb. 50;* a legacy to a brother, of $300, to be disposed of by him by his will, as he shall see fit, the whole interest vests in the legatee, *Paice* v. *Archbishop of Canterbury, 14 Ves. 370;* a bequest to a legatee, "for such purposes as he shall think fit, is a gift to himself," *per Lord Eldon.* Sir William Grant decided that the words, "to dispose thereof as she shall bequeath by will and think proper," gave a general power. It was not a power confined to a will, but the words "think proper" gave an absolute

power of disposition. And *Kendall* v. *Kendall, 9 Stew. Eq. 91,* illustrates this same matter. The words there were " may see fit."

II. If the proposition argued for is not true, yet the power of disposition and use given to the wife by the will, authorized her to make full use, for her own benefit, and at her own will and pleasure, of every part of the principal or *corpus* of said property, and that no person has any right in any part of said estate of which she made disposition or change. I join with this proposition.

III. That there appearing in her hands or possession, at the time of her death, no personalty whatever, standing in her name as executrix of her husband, or which otherwise appeared even to have been his, the power of disposition given by said will has manifestly been exercised, even if there has been a conversion of such personalty into different form, and all claim by any other person than her legal representative or next of kin is by law excluded. Substantially, these propositions assert that the collection of securities by Mrs. Cory, and the re-investment of their proceeds in her own name and for her own use, is within the power conferred by this will. *Pennock* v. *Pennock, L. R. (13 Eq. Cas.) 144; Stringer's Case, L. R. (6 Ch. Div.) 16; Barford* v. *Street, 16 Ves. 136; Marler* v. *Tommas, L. R. (17 Eq. Cas.) 8; Irwin* v. *Farrer, 19 Ves. 86; Tomlinson* v. *Dighton, 1 P. Wms. 149; Holloway* v. *Clarkson, 2 Hare 521.*

IV. In no court can any claim be made against the administration of Mrs. Cory, or against any of the securities found after her death, and purporting to belong to her, except such securities shall be identified, clearly and with precision, as having once belonged to Lewis Cory, and having been simply converted in form. The burden of proof lies upon the complainant. No amount of probable evidence will suffice.

1. No profits, dividends, rents or income whatsoever derived from the estate of Lewis Cory, can be claimed by his executor; all these are representative results of her life estate.

She had the use of all the property of her husband, real or personal, during her life.

2. No increment of the estate derived from any disposition or use of it by her can be claimed by the complainant, such as premium upon gold, or in the change, if any, of stocks, stock dividends, scrip dividends or any other mode or form of increase.

3. The law of California must govern, because it is the *lex domicilii*, and as to real estate, *lex rei sitœ*.

The statutes applying are as follows—they are re-enactments of former law: *Civil Code of California* ¶ *5,162 ch. 3 p. 162* ; ¶ *5,164 § 164* ; ¶ *5,171 § 172* ; ¶ *6,402 § 1,402.*

Under the California statute, all property acquired after marriage, by either husband or wife, except such as is acquired by gift, bequest, devise or descent, is common property. *Meyer* v. *Kinser, 12 Cal. 247; Beard* v. *Knox, 5 Cal. 252; Burton* v. *Lies, 21 Cal. 87; Estate of Silvey, 42 Cal. 210; King* v. *Lagrange, 50 Cal. 333; Estate of Frey, 52 Cal. 661.*

The rights of the wife in community property are further illustrated by the following cases, among others: *Morrison* v. *Bowman, 29 Cal. 337; Beard* v. *Knox, 5 Cal. 252; Payne* v. *Payne, 18 Cal. 291; Jewell* v. *Jewell, 28 Cal. 232.*

The homestead does not constitute any part of the common property. See *Civil Code § 1,474; Estate of Tompkins, 12 Cal. 114; Smith* v. *Smith, 12 Cal. 216; Meyer* v. *Kenzies, 12 Cal. 247; Burton* v. *Lies, 21 Cal. 87; Riley* v. *Pepl, 23 Cal. 70; Fuller* v. *Ferguson, 26 Cal. 546.*

A tenant for life of real or personal estate is bound to account for the principal only. *Miller* v. *Delamater, 12 Wend. 438; Lord Douglass* v. *Chambers, 2 Ves. 501; Fearne* v. *Young, 3 Ves. 549, 552, 553; 2 Dall. 183, 192.*

Extra dividends or bonuses on shares belong to the tenant for life, and not to the remainderman. *Simpson* v. *Moore, 30 Barb. 637.*

To recapitulate:

1. The personalty left represents only what Mrs. Cory earned and laid up out of her own revenues.

2. If it did not, it was nevertheless hers by law, under the

right given her to use and dispose of all, both principal and interest, as she saw fit and thought proper.

3. No actual injustice is done to the legatees in her husband's will.

4. Because of the above, and because the complainant has been entirely unable to identify any property now left as having been the principal left by her husband, his suit has failed, and his bill should be dismissed.

*Mr. Thomas N. McCarter*, for Thomas Douglas, executor of Lewis Cory, deceased.

I. The first and most important question arising out of these pleadings is as to the nature and extent of the right which Mrs. Cory took to her husband's property under his will. The complainant contends that she only was entitled to an estate for life, while, on behalf of her administrator, it is contended that her estate was absolute.

This is no longer an open question in New Jersey, where it has been repeatedly decided that, under such a will, the first taker has only a life estate. *Downey* v. *Borden, 7 Vr. 460; S. C., 6 Vr. 74.*

The rule laid down in these cases is cited approvingly by Mr. Justice Carpenter, in *Armstrong* v. *Kent, 1 Zab. 522.* Also, in the same case, in the court of errors, in *2 Hal. Ch. 637;* see, also, *Mason* v. *Trustees, 12 C. E. Gr. 51; Gulick* v. *Gulick, 10 Id. 324, 330; 12 Id. 498; Garthwaite* v. *Lewis, 10 Id. 352.*

The same rule is laid down in the following cases: *Jackson* v. *Robbins, 16 Johns. 537; Ferry* v. *Wiggins, 47 N. Y. 572; Flanagan* v. *Flanagan, 8 Abb. N. C. 413;* especially, *Hall* v. *Otis, 71 Me. 326; S. C., 11 Rep. 397; Stuart* v. *Walker, 72 Id. 145; S. C., 11 Rep. 533; Burleigh* v. *Clough, 52 N. H. 267; Harris* v. *Knapp, 21 Pick. 412; Reinders* v. *Keppleman, 68 Mo. 428; S. C., 30 Am. R. 802; Brant* v. *Virginia Coal Co., 3 Otto 326; Giles* v. *Little, 14 Otto 291; Smith* v. *Bell, 6 Pet. 80; Downie* v. *Downie, 9 Biss. 353; Le Marchant* v. *Le Marchant, L. R. (18 Eq. Cas.) 414.*

In fact, this very will, and the rights of the executor and

widow under it, have been construed at law by a justice of the supreme court, sitting in the Union circuit. Mr. Douglass, the present complainant, brought an action at law in the supreme court of this state, against the defendant Pratt, to recover the possession of some real estate in Rahway, which was testator's in his lifetime, and which was defended by Mr. Pratt under Mrs. Cory's supposed title. It was tried before Mr. Justice Van Syckel, without a jury. In rendering judgment, Mr. Justice Van Syckel said : " There is no dispute as to facts : the title to the premises in question was in Lewis Cory at the time of his decease. Plaintiff claims possession under the will of Lewis Cory, as his surviving executor. Two defences are interposed— first, that Eliza B. Cory took an estate in fee simple, under the will, because she had an absolute power of disposition, with the right to appropriate to her own use the proceeds. The distinction is between a devise expressly for life, with a power of disposition annexed, and a devise in general terms, with such power annexed. In the former case, an estate for life only passes ; in the latter, a fee. *Downey* v. *Borden, 7 Vr. 460.* Thisis a life estate only, by the express order of the will."

The whole estate, with its accumulations not used or consumed by the widow, remained testator's estate, subject to the provisions of the will, and, of course, to be administered by the surviving executors. A mere change in the holding of the property could not defeat the will nor divest the rights of those coming after her and lawfully claiming under the will. This was practically decided by Vice-Chancellor Dodd, in the order before referred to, which he advised.

The law is the same in California. *Norris* v. *Hensley, 27 Cal. 439.*

The case of *Kendall* v. *Kendall, 9 Stew. Eq. 91,* is not in conflict with the position above contended for.

Two circumstances attended that bequest, which are wanting here. One was that the property was of a character which was consumed by its use. This has always entitled the legatee for life to an absolute property, even when there is a bequest over. *Ackerman* v. *Vreeland, 1 McCart. 27.*

The other circumstance in the Kendall case was, there was no bequest over after the death of the widow.

A reference, however, to the authorities which the chancellor cites, will make manifest the difference between the Kendall case and the present case: *Dutch Church* v. *Smock, Sax. 154; Bradley* v. *Westcott, 13 Ves. 444; Giles* v. *Little, 14 Otto 291; Maxwell's Will, 24 Beav. 246; Pennock* v. *Pennock, L. R. (13 Eq. Cas.) 144; Diehl's Appeal, 36 Pa. St. 120.*

II. I will now proceed to examine how the rights of these parties are affected by the claim set up in the answer by way of amendment, that this was community property under California law.

If it were necessary, it would be easy to show, from the evidence, that, under the construction put upon the law by the defendant's own witness, Mr. Laine, this property would not be community property.

It is perfectly plain, from the evidence, that all the property owned by testator at his death was the *accumulation* of what he took with him to California from New Jersey. That, according to defendant's own evidence, would not be community property. See, also, *Martin* v. *Martin, 52 Cal. 235; Kramer* v. *Kramer, Id. 302.*

But we are not compelled to stand on that. There is another principle of equity which will prevent the administrator of Mrs. Cory from setting up such a claim now. I refer to the doctrine of election, "which doctrine is founded on the principle that there is an implied condition that he who accepts a benefit under an instrument, must adopt the whole of it, conforming with all its provisions and renouncing every right inconsistent with them." See the whole subject discussed in *White & T. Lead. Cas. in Eq., vol. I., pt. 1,* in the cases of *Noys* v. *Mordaunt, 2 Vern. 581; Streatfield* v. *Streatfield, White & T. 333; Cases Temp. Talb. 176.*

See, also, the American notes, page 373, where the rule is said to be established in this country almost exactly as in England.

*Hyde* v. *Baldwin, 17 Pick. 308; Smith* v. *Smith, 14 Gray 532; Watson* v. *Watson, 128 Mass. 152.*

As to what will amount to such an election, see *White & T. Lead. Cas. 372;* see, also, *2 Story Eq.* §§ *1,076, 1,077, 1,078; Adams Eq. (6th Am. ed.) 241 (\*92); 2 Spen. Eq. Jur. 586; Dillon* v. *Parker, 1 Swanst. 393; Grillon* v. *Howard, Id. 433– 458; Stark* v. *Hunton, Sax. 216; Norris* v. *Clark, 2 Stock. 57; Kearney* v. *McComb, 1 C. E. Gr. 195; Bradford* v. *Kents, 43 Pa. St. 474; Fulton* v. *Moore, 25 Id. 476.*

This doctrine has been fully recognized by the courts of California, and it has been applied to prevent a claim to community property when such a claim is inconsistent with a will under which the party entitled to the community property has accepted a beneficial interest. *Morrison* v. *Bowman, 29 Cal. 339, 346; Noe* v. *Splivalo, 54 Id. 207.*

Besides, the community law can have no application to persons where rights of property were fixed by a marriage contract, made where no such law exists, but when by the law in force where the parties are domiciled when the marriage takes place, an incident of the contract of marriage is that all a wife's property then owned and what she may thereafter acquire, is transferred to the husband, as was the law of New Jersey in 1849, and when these parties were married. *Story's Confl. L., note to* § *187; Vreeland* v. *Ryno, 11 C. E Gr. 160; Westervelt* v. *Gregg, 12 N. Y. 203; Kramer* v. *Kramer, 52 Cal. 302; Lewis* v. *Johns, 24 Cal. 98; George* v. *Ransom, 15 Cal. 322.*

III. It is claimed on the part of the defendant that because of the fact that, at the time of Mrs. Cory's death, all the property in her possession was in her own name, and therefore it is incumbent on complainant to identify that claimed by him by some ear-mark, showing that it once belonged to the husband, and that for all that cannot be so identified, she is entitled in her own right.

The answer to this contention rests on three propositions, easily established:

1. That as to all the property not used by herself she was a trustee.

2. That a trust fund will be followed by and for the *cestui que trust*, no matter how its form may have been changed, or how much it may be intermingled with the trustee's own property.

3. That when a trustee mixes trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his.

In support of the *first* of these three propositions, I claim that Mrs. Cory, by proving the will as executrix, accepted the position of trustee under a direct trust, by which it was her duty to save whatever of this property that she did not use, for the benefit of those beneficially interested under the will.

She thereby became trustee of a direct trust, and by accepting that appointment she bound herself to discharge every duty devolving on her as such trustee.

She took the property *cum onere.*

Had she been a mere life-tenant, without the superadded character of executrix, she would, in equity, have been treated as a trustee for the benefit of the remainderman. *Perry on Trusts § 539 et seq.; Cutler v. Ricamio, 1 C. E. Gr. 89; Exrs. of Rowe v. White, Id. 411; Howard v. Exrs. of Howard, Id. 486; In the matter of Ryerson, Id. 43; Depeyster v. Clendenning, 8 Paige 303, 304; Clark v. Clark, Id. 152, 160; Cowenhoven v. Shuler, 2 Paige 131.*

The second and third propositions may be treated together, and the doctrine that a trustee cannot discharge himself of his trust by changing the form of the property or investing it in his own name, and that if he does so mix it with his own, the *onus* rests on him of separating and distinguishing what belongs to himself from the trust estate, and that it results from his inability to do so that the *cestui que trust* takes the whole estate that went into his hands, is supported by the following authorities: *Perry on Trusts §§ 836, 837, 838 &c.; National Bank v. Insurance Co., 14 Otto 54; 1 Story's Eq. § 623 and note (d); Jewett v. Dringer, 3 Stew. Eq. 291, and cases cited in reporter's note.*

It is not incumbent on the complainant to identify and select out that which belongs to him. Mrs. Cory had it in her power,

and it was her duty to keep this property separate from her own, if she had any. She has failed to do so under circumstances strongly indicative of an intention to conceal from the legatees in remainder the amount of the trust property in her hands. As has been before shown, every presumption will be made against her under such circumstances, and it is well settled that when a trustee speculates with the trust fund and derives profits therefrom, he must account for such profits as well as for the principal of the fund. *Blauvelt* v. *Ackerman, 5 C. E. Gr. 141; Hamburgh Mfg. Co.* v. *Edsall, 1 Beas. 392; McKnight* v. *Walsh, 8 C. E. Gr. 136, 9 Id. 498.*

IV. It remains to be considered whether the decree of the chancellor was right in limiting complainant's recovery to the amount decreed, $52,000, on the ground, as declared by the vice-chancellor in his opinion, that by the true construction of the will Mrs. Cory was entitled to all the interest on and accumulations of this estate.

Complainant contends that the will is not legally capable of such a construction; that the vice-chancellor erred in arriving at such a conclusion; and from that part of his decree complainant has appealed.

The opinion of the court was delivered by

Depue, J.

The testator, by his will, gave his wife, as tenant for life and as executrix, the sole custody and charge of his estate during her lifetime. He contemplated that his executors should have no charge over his property until after his wife's death. She administered upon his whole estate, and converted all of it into money and securities, with the exception of some of the lands at Rahway, which are still unsold. These securities were either in the name of Mrs. Cory or were public securities which she had purchased with the proceeds or increase of the estate which came into her hands. They have no earmarks to identify them as the husband's property. The bill cannot be considered as in the nature of an action of trover by the surviving executor of the

deceased to obtain possession of property remaining *in specie*, of which the testator died possessed, with a view to administration upon it by the surviving executor. It must be treated as a bill by the surviving executor for an account of the administration by the executrix of the testator's estate for the purpose of enabling him to execute the trusts arising from the bequests in the will, to take effect after the death of Mrs. Cory, the duty of executing which, after her death, devolved upon the executors named in the will. The securities in which the executrix invested her husband's estate being in this state, administration on her estate having been granted here, and probate of the testator's will having been made here, the court of chancery has the jurisdiction to require an account, although the testator's domicile was abroad. Primarily, the courts of a foreign country in which personal property of such a testator may be found, have jurisdiction only to grant probate of the will, and of actions for the recovery of the property ancillary to its administration in the courts of the testator's domicile; and the foreign courts cannot entertain an administration suit founded on questions relating to the construction of the will or the administration of the estate. But the parties who might insist upon the jurisdiction of the courts of the domicile over the subject, may, by their conduct, give to the foreign court jurisdiction to construe the will, and even to make administration upon property of the testator. *Enohin* v. *Wylie, 10 H. of L. Cas. 1.* The bill filed by the foreign executor in this case is like the pleadings in *Enohin* v. *Wylie*, which were held to give the English court of chancery jurisdiction to become a court for the construction of the will.

To accomplish the purpose of the litigation which these parties have set on foot in the court of chancery, an accounting of the administration by Mrs. Cory of so much of the testator's estate as came to her possession, will be required, both with respect to her rights therein and to her disbursements connected therewith; and the court has jurisdiction to obtain such an account as to the whole estate, although a considerable part of the testator's property was located in the state of California. *Ewing* v. *Ewing, L. R. (9 App. Cas.) 34; S. C., L. R. (22 Ch. Div.) 456; Stirling*

Pratt v. Douglas.

v. *Cartwright*, L. R. (*11 Ch. Div.*) *522*. In exercising this juris-diction, the court will be governed by the laws of California, so far as concerns the testator's personal estate and the proceeds of his lands in California sold and converted into money by the executrix. *1 Jarm. on Wills 6*. The rights of the parties in lands in New Jersey will be decided by the laws of this state, for the incidents of real estate, its disposition and alienation, and the right of succession, and all questions as to burdens and liabilities imposed upon it depend solely upon the *lex sitæ*. The laws of the country where the testator may be domiciled at his death, cannot impose burdens or liabilities upon, or provide for, the disposition of lands in a manner not recognized by the law of the country where the estate is situated. *Nelson* v. *Bridport*, 8 *Beav.* *547 ; Harrison* v. *Harrison*, L. R. (*8 Ch. App.*) *342 ; Whart. Confl. L.* § *291*.

The testator, by his will, gave his widow an estate for life in all his property, real and personal. To the gift to her for life he superadded a power to sell and dispose of his property, or any part thereof. Counsel of the administrator contended that the superadded power either gave her an absolute estate in all the testator's personalty, or authorized her to make sale and conver-sion of the *corpus* of his personal estate at her own will and pleasure, and to take the proceeds thereof for her own benefit. His argument was rested upon the fact that the power to sell was given to her " in case she should find it necessary or see fit to dispose of the same," and the use of the words " remaining at the decease of my wife," in the power conferred upon his executors to sell after the death of his widow. In *Downey* v. *Borden*, 7 *Vr. 460*, it was held by this court, on a devise of lands ex-pressly for life, that superadded words granting a power to sell in fee would not enlarge the life estate to a fee. The same rule of construction is applicable to bequests of personal estate. *Dutch Church* v. *Smock, Sax. 148 ; Annin* v. *Vandoren, 1 McCart. 135*. These cases were enunciations of common law principles, which, in the absence of evidence to the contrary, must be as-sumed to be the law of California. The meaning of the testator in his will is apparent. For so much of his estate as he gives

"for the sole use and benefit of his wife, to be under her control and used by her as she may see fit to use the same," he expressly limits the time of her use and enjoyment, "during the period of her natural life;" and he provides for the residue not only by the specific bequests, but also by a residuary disposition of the balance of his estate. There are no words in the will which authorize her to sell and dispose of the testator's property for her own use. On the contrary, the power of sale over his estate, real and personal, expressed in the will, is given to her as executrix, which implies a fiduciary disposition of the proceeds realized from the sales, inherent in the office, in virtue of which she was to exercise the power. I agree with the conclusion of the vice-chancellor that under the testator's will Mrs. Cory took only the use of his property for her life. In virtue of the gift to her, she became entitled to the whole income and profits which accrued from her husband's estate during her life; but her administrator must account for the principal realized by her from the sale and conversion of his property.

The important question is the effect of the community property law of California on the testator's dispositions contained in his will.

The testator, before his removal to California, was owner of certain real estate situate in or near Rahway, in this state, and also of four shares of the capital stock of the Rahway Bank, and forty-six shares of the stock of the New Jersey Railroad and Transportation Company. All this property was in his individual name. The railroad stock consisted of forty shares transferred to him by George Brown in 1846; the rest of it arose from stock dividends subsequently added to it. When he removed to California he carried with him the frame of a house ready to be set up, and also a stock of goods suitable for a variety store. The house he set up in California, and with his merchandise established a store. This business he followed until 1854, when he sold it out. Thereafter his business was loaning and investing money, and at his death he had accumulated considerable property in California, invested in lands and securities in his own name.

Pratt v. Douglas.

The law of California recognizes two kinds of property as between husband and wife—separate property and community property. The separate property of either husband or wife is entirely under the management, control and disposition, testamentary or otherwise, of the spouse to whom it belongs, free from all interest or claim on the part of the other. During the marriage the husband alone has the custody, control, management and power of disposition of the community property, and it is liable for his debts. Upon the death of the husband the community property is first subject to the payment of debts and expenses of administration, and of the residue the widow is entitled absolutely to one undivided half, which is partitioned and set apart and vested in her in the proceeding for administering upon the estate; the other half is subject to the testamentary disposition of the husband, or, if he dies intestate, devolves upon certain specified heirs. Separate property is defined to be such property of the husband or wife as he or she owned at the time of the marriage, or acquired during marriage by inheritance, devise, bequest or gift, and the rents and profits thereof. All other property, whether real or personal, is community property; and it is a settled doctrine of the courts of that state that all property acquired by the husband during the continuance of the marriage is presumed to be community property. *1 Pom. Eq. Jur.* § *503*. The statute of 1850, as amended by the act of 1861, which was in force until the 4th of April, 1864 (the testator died January 2d, 1863), gave the widow surviving one-half of the common property, and empowered the husband to make testamentary disposition of the other half where he died, as the testator in this case did, leaving no descendants. *Jewell v. Jewell, 28 Cal. 232*.

On the part of the executor it was contended that Mrs. Cory lost her right to share in the community property by election— by the probate of the will, and selling and conveying lands of the testator under powers granted to her as executrix, and by treating her husband's property as an "entire mass, one and indivisible."

In California, the common law dower has been wholly abol-

ished, and the wife's interest in the community property has been substituted in its place; and in cases arising upon wills made by husbands purporting to dispose of the community property, the courts of California, in determining the force and effect of the widow's election to take under the husband's will, have adopted the general doctrine established in England and in most of the American states concerning election between a testamentary provision for the widow and her legal right of dower. *1 Pom. Eq. Jur.* § *504.*

The general doctrine of the law is, that, where the testator has only a partial interest in property he disposes of by his will, courts will incline as far as possible in favor of a construction which will apply the language of the will only to the interest or estate which the testator is able to dispose of in his own right, and it requires an unequivocal expression or indication of an intent to dispose of the entire property, in order to raise a necessity for an election. *1 Pom. Eq. Jur.* §§ *488–493.* In *Adsit* v. *Adsit, 2 Johns. Ch. 448,* Chancellor Kent, after a historical review of the prior cases, deduces from them a rule which has met with uniform approval—that to enable the court to deduce an intention that a testamentary gift to the widow should be *in lieu* of dower, " the claim of dower must be inconsistent with the will and repugnant to its dispositions or some of them; it must, in fact, disturb or disappoint the will." This principle has been adopted by the California courts in dealing with the question of election, where the widow's right in community property is in the issue. In *Morrison* v. *Bowman, 29 Cal. 337,* the court held that if the husband, by his will, undertakes to dispose of his wife's half of the common property, as well as his own, to her and others, and she elects to accept the bequests made to her, she will thereby become divested of her interest in the common property, provided the assertion of the community right would necessarily defeat the objects of the will. Prof. Pomeroy, speaking on this subject on a citation of the California cases, says that in order to put the wife to an election between the provisions of the husband's will and her right to community property, " the testamentary provision in her behalf must either be declared in

express terms to be given to her in lieu of her proprietary right and interest in the community property, or else an intention on his part that it shall be in lieu of such proprietary right must be deduced by clear and manifest implication from the will, founded upon the fact that the claim to her share of the community property would be inconsistent with the will, or so repugnant to its dispositions as to disturb and defeat them. An intent of the husband to dispose of his wife's share of the community property, * * * * and thus put her to an election, * * * * will never be inferred when the words of the gift may have their fair and natural import by applying them only to the one-half of the community property which he has the power to dispose of by will." *1 Pom. Eq. Jur.* § *550.* Among the cases cited are *Payne* v. *Payne, 18 Cal. 291,* and *Estate of Silvey, 42 Id. 210.* In *Payne* v. *Payne,* a husband leaving a wife and children gave all his property, being community property, to his wife absolutely, and it was held that she took one-half of the estate under her community right and the other half under the will. In *Estate of Silvey,* a husband left all his property, which was wholly community property, to his wife for life, and after her death to be divided equally among his children. It was insisted in behalf of the children that the widow was put to her election; but the court held that the general language of the will must be confined to the half the testator was able to dispose of, and that the widow took one-half absolutely as her own and the other half for her life, and that no necessity for an election arose.

Where a testator has only a limited interest in property he affects to dispose of by his will, as, for instance, an undivided share, there is a distinction between a gift in general words of description, such as "all my lands," or "all my estate," and the like, and a gift of specific property. In cases of the first class, an obligation to elect does not arise, for the testator's language can have full effect when applied only to his share or interest, and he is presumed to have intended to give only the property he had power to dispose of. In cases of the second class, it cannot be said that, upon every specific devise or bequest, a duty to elect arises. A case for an election by the co-owner of the

property so given, who is a beneficiary under the testator's will, will be presented only where the testator's gift of it to another is so expressed by words of description as to import an intent to give to the latter the whole of the common property in its entirety. *1 Pom. Eq. Jur.* § *139 ; 1 Jarm. on Wills 456 (Rand. ed., 2 Id. 20) ; 2 Spenc. Eq. Jur. 593 ; Dummer* v. *Pitcher, 2 Myl. & K. 262 ; 1 Lead. Cas. in Eq. 514 [346].* The testator, in the description of the estate given to his wife, uses words of general description, "all my real and personal estate," and there is no gift over of property that was in California, by any specific description. I think it is clear, from an examination of the decisions of the California courts, that, so far as concerned so much of the testator's property, real and personal, as was in, or invested in, that state, there is nothing in his will that put the widow to an election, and that, therefore, the consequences of an election, to be implied from her conduct, were not imposed upon her. She could take her life estate, under the testator's will, and her share in the community property, without disturbing, in the least, the testator's other dispositions of his property in California. It is true that she made probate of the testator's will, and accepted the office of executrix, and made sale and conveyance of lands which were community property, under powers granted to her as executrix. As between the widow and the purchasers, the title of the latter to lands conveyed may be absolute, by reason of an equitable estoppel; but, as between the widow and the other beneficiaries under the will, that circumstance neither created an estoppel nor carried with it a surrender of her right in common property, which the testator, on established rules of construction, did not undertake to dispose of by his will. A person accepting a benefit under a will, is required, on the doctrine of election, to relinquish only such of his rights as are inconsistent with the provisions of the will under which he takes, that no disposition of the testator therein may be defeated.

Nor did the widow lose her right in the community property, by the fact that she dealt with it and disposed of it as a whole. The evidence shows that her conduct, in that respect, was induced

by ignorance of her rights—acting on the advice of counsel, that, under her husband's will, she was entitled to take to herself, absolutely, the entire property, if she exercised her powers of sale, and, instead of intending thereby to relinquish her half of the community property, her purpose was to take the whole of it to her individual use, rightfully, as she supposed. Where a party is bound to elect between two inconsistent rights, and the contention is that an election has been made by conduct, it must be shown that the party acted with a knowledge of his rights—that, knowing that he could not hold the property which he was otherwise entitled to, and that given to him by the will, he acted with an intention to relinquish the former and accept the latter. *Wilson* v. *Thornbury, L. R. (10 Ch. App.) 239; Dillon* v. *Parker, 1 Swanst. 359, 379, 380; Padbury* v. *Clark, 2 Macn. & G. 298; Spread* v. *Morgan, 11 H. of L. Cas. 588; 1 Jarm. on Wills 471 (Rand. ed., 2 Id. 40).* An election made in ignorance, or under a mistake of the real nature and extent of the party's own rights, is not binding, and may be revoked, unless the rights of third persons have intervened, which would be interfered with by the revocation. *1 Pom. Eq. Jur. § 572; Macknet* v. *Macknet, 2 Stew. Eq. 54.* Especially should conduct, otherwise indicative of an election, be explainable, and acts done under it be revocable, where the party is under no obligation to make an election. *King* v. *Lagrange, 50 Cal. 328,* is quite apposite to this branch of the case. There, a testator owning land which was community property, devised it all to his wife, and gave to his executor a power of sale over it. The executor, in ignorance of the community law, sold all the land, under the power. The purchaser supposed he was buying the entire estate, and the widow, in ignorance of her right, received the money for the whole. In an action by the widow to recover the one-half as community property, the court held (1) that the will did not present a case for an election, and (2) that if an election had been necessary, the acts of the widow, being done in ignorance of her rights, would not amount to an election.

The sale of the testator's property by the widow in mass, and the fact that she kept no accounts, may place her administrator

at a disadvantage in taking an account of her administration, but will not involve her in a total loss of her rights. Even in the case of a confusion of goods the law will not impose a forfeiture as the penalty unless in cases of fraud. *Wooley* v. *Campbell, 8 Vr. 163; Jewett* v. *Dringer, 3 Stew. Eq. 291; Ryder* v. *Hathaway, 21 Pick. 298–305; Livingstone* v. *Rawyards Coal Co., L. R. (5 App. Cas.) 25, 34, 39; Bigelow on Fraud 97.* Except on the hypothesis of good faith on the part of Mrs. Cory, Douglas cannot be acquitted of blame. He united with her in the probate of the will, and accepted a power of attorney from her, individually and as executrix, under which he collected and remitted assets of the estate to her. As an executor, having accepted the trust, he certainly could have required of her an inventory of the estate which might eventually come into his hands for administration. For his neglect to do so he can only be excused on the ground of the common error with respect to the nature and extent of Mrs. Cory's interest in her husband's estate.

The lands in New Jersey and the stock of the Rahway Bank and of the New Jersey Railroad and Transportation Company, stand upon a different footing. These lands and the stock, with the exception of the increase of the railroad stock by stock dividends, the testator owned before he removed to California. With respect to the lands, I have said that they are governed by the laws of this state. The community property law of California has no application to them. The only estate Mrs. Cory had in them was the life estate given to her by the will, or her common law right of dower. She must be charged with the proceeds she realized from the sale of them. With respect to the bank and railroad stock, it will not be necessary to consider whether, by the California law, they would be distributed as community property or as the husband's separate property, for I think it is clear that the testator made such disposition of these stocks as put the widow to an election. The four shares of Rahway Bank stock the testator owned when his will was made. His railroad stock had at that time been increased by stock dividends to sixty-three shares, and at his death had become, by the same means, seventy-nine shares. In the last paragraph of his will he designated this

Pratt *v.* Douglas.

property as "four shares of the stock of Rahway Bank and about sixty shares of New Jersey Railroad and Transportation Company, all of which," he says, "I wish my executors to take charge of and faithfully carry out my last will and testament;" and the testator, in his will, distinguished between his executrix, who was to have sole charge of his estate during her life, and his executors, who were to enter upon the duties of their office after her death. This stock the testator disposed of, not only specifically, but in language importing an intention to dispose of all of it as an entirety; and his widow could not assert her right in it as community property without disturbing and disappointing the testator's disposition of it. In *Swan* v. *Holmes, 19 Beav. 471,* a sum of £10,000 stood settled in trust for two sisters for life, and after their death two-thirds of the capital in trust for their brother and one-third in trust for their sisters. The brother bequeathed the whole of his property to trustees as part of certain trusts for his sisters, and he afterwards bequeathed the property, "including the £10,000 trust money," to other persons, and the court held that the sisters must elect between the benefits given them by the will and their interest in the £10,000 consols. *Reynolds* v. *Torin, 1 Russ. 129; Shuttleworth* v. *Greaves, 4 Myl. & C. 35,* and *Grissell* v. *Swinhoe, L. R. (7 Eq.) 291–295,* are cases of the same import, and the supreme court of California held that the widow's duty to elect between her right in community property and benefits given to her by her husband's will, arose upon a devise of real estate by a description similarly specific. *Morrison* v. *Bowman, 29 Cal. 337.* The widow was entitled to the dividends upon this stock, whether made in cash or in stock ( *Van Doren* v. *Olden, 4 C. E. Gr. 176 ; Ashhurst* v. *Field, 11 Id. 1*), as the produce of her life estate; but she must account for so much of it as the testator owned at his death.

The widow expended $15,000 in erecting a mausoleum to the testator's memory, and $15,000 in building a house on one of the testator's lots in Rahway. She paid annual taxes to the amount of $6,104.97, and assessments laid upon the property by the municipal authorities for permanent improvements amounting to $9,921.80.

The expenditure for a monument was excessive and unreasonable, and not justified by the husband's pecuniary circumstances. She should be allowed a reasonable sum only therefor, say $500. As tenant for life, she was obliged to pay the ordinary annual taxes out of her own pocket. The assessments for city improvements should be equitably apportioned between the life tenant and the interests in remainder. *4 Kent 75 ; Plympton* v. *Boston Dispensary, 106 Mass. 544; Stilwell* v. *Doughty, 2 Bradf. 311 ; Peck* v. *Sherwood, 56 N. Y. 615 ; Fleet* v. *Dorland, 11 How. Pr. 489 ; Miller's Estate, 1 Tuck. 346.* With respect to the expenditure for erecting the house, the general rule is that the tenant for life cannot lay out money in buildings or improvements upon the estate and charge the outlay to the inheritance. *Caldecott* v. *Brown, 2 Hare 144; Nairn* v. *Majoribanks, 3 Russ. 582 ; Bostock* v. *Blakeney, 2 Bro. C. C. 653–657 ; In re Leigh's Estate, L. R. (6 Ch. App.) 887–892.* There does not appear in this case anything to take this expenditure out of the general rule.

The decree should be reversed. There should be a reference to ascertain the amount of the testator's estate, real and personal, that came to the hands of Mrs. Cory, and the amount of the community property, and an account of her administration should be stated according to the views here expressed.

Neither party should have costs on this appeal as against the other.

*Decree unanimously reversed.*